UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ANDREW OSTROWSKY,                                       REPORT AND
                              Plaintiff,                RECOMMENDATION
                  - against -
DEPARTMENT OF EDUCATION OF NYC, et al.,                 12-CV-2439 (RRM) (JO)
                              Defendants.
--------------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiff Andrew Ostrowsky ("Ostrowsky"), a New York City public school teacher,

accuses the city's Department of Education ("DOE"), the city's Mayor, the DOE Chancellor, and

the Principal and Assistant Principal of the school to which he was formerly assigned, of several

violations of federal and state law arising from his allegation that he was unfairly subjected to

adverse evaluations of his teaching performance. Docket Entry ("DE") 32 (Second Amendment

Complaint) ("Complaint"). The defendants move to dismiss the Complaint for failure to state a

viable claim. DE 35. Upon a referral from the Honorable Roslynn R. Mauskopf, United States

District Judge, I now make this report and respectfully recommend, for the reasons set forth below,

that the court grant the motion and dismiss all of the Complaint's claims with prejudice.

I.      Background

        A.      Facts

        I base the following factual summary on the allegations in the Complaint and the

documents it incorporates by reference, all construed in the light most favorable to Ostrowsky.

*See*, *e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155-56 (2d Cir.

2006). The events at issue occurred while Ostrowsky was serving as a tenured math teacher at the

Frank Sinatra School of the Arts ("FSSA"); he has since transferred to another New York City

public high school, where he serves in the same capacity.

Ostrowsky had an almost spotless employment record at FSSA for ten years until 2011, when two things changed. First, defendant Sofia Apostolidis ("Apostolidis") was appointed as the school's Assistant Principal of Instruction. Second, FSSA's overall school grade dropped from an "A" to a "B" just before the start of the 2011-2012 school year. Complaint ¶¶ 18, 22, 59, 126, 129. In an effort to regain its "A" rating, and driven by monetary bonus incentives, FSSA's administration began to closely follow a new city-wide public school administrative policy. Defendants Michael Bloomberg ("Bloomberg") and Dennis Walcott ("Walcott"), the city's Mayor and DOE Chancellor, respectively, had designed the new policy to decrease the city's educational costs by reducing the number of public school teachers and by hiring less experienced and less qualified teachers to replace tenured teachers who commanded higher salaries, greater job security, and more lucrative pension guarantees. *See id.* ¶¶ 33-45, 58-64, 66-68, 73, 74, 76, 86-89, 100, 112-19, 125, 129, 231. In implementing that policy at FSSA during the 2011-2012 school year, Apostolidis, acting under the guidance of FSSA's Principal, defendant Donna Finn ("Finn"), targeted Ostrowsky, against whom she had maintained a grudge for years. Specifically, and as detailed further below, Apostolidis and Finn subjected Ostrowsky to multiple evaluations that produced unduly critical assessments, by means of which they sought either to encourage Ostrowsky to seek employment elsewhere or to amass enough negative evaluations to justify terminating his position at FSSA. *See id.* ¶¶ 58, 67-71, 85, 90-91, 103-05, 108-09, 111, 126-27, 229-30.

On December 7, 2011, Apostolidis observed Ostrowsky teach a statistics lesson. She then met with him to discuss her evaluation on December 12, 2011, and later wrote a report dated January 27, 2012 (the "Observation Report"). Apostolidis gave the lesson an overall rating of

"unsatisfactory" and placed the report in Ostrowsky's personnel file. *Id*. ¶¶ 57, 126, 128, 133, 163, 209, 235. During the same time period, Apostolidis also criticized Ostrowsky's teaching performance in informal conversations with Ostrowsky, and conducted subjective "mini-observations" of his classroom management skills. *Id*. ¶¶ 206-12.

Ostrowsky responded to the "unsatisfactory" rating of the December 2011 classroom observation by exercising his right under his union's collective bargaining agreement with the school system (the "CBA") to place a written rebuttal to the document in his personnel file. His response included a point-by-point rebuttal of Apostolidis's characterizations of his abilities and of events that, Ostrowsky claimed, she had distorted or falsified. *Id*. ¶¶ 137-59.[1]

On April 3, 2012, Apostolidis summoned Ostrowsky and his union representative to a meeting. During that meeting Apostolidis chided Ostrowsky for an incident in which a student failed to return promptly to the classroom from the cafeteria. Apostolidis later memorialized that meeting in a disciplinary letter (the "Disciplinary Letter" or, collectively with the Observation

---

[1] Ostrowsky's right to file a written rebuttal was the result of a 2007 amendment to the CBA. The same amendment eliminated a teacher's right to challenge a negative assessment by initiating a grievance procedure and seeking the remedy of removing the challenged document from the personnel file. *Id*. ¶¶ 98-99, 109-10. Because Ostrowsky no longer had a right to file a grievance and seek to have the document removed from his personnel file, Ostrowsky decided that he had no choice but to seek such a remedy by filing a lawsuit in state court. *Id*. ¶¶ 317-18. Ostrowsky's Article 78 proceeding, initiated on May 4, 2012, was ultimately dismissed. The court reasoned that it lacked any legal basis to order the Observation Report to be expunged given the contractual modifications to the CBA eliminating the grievance process, and that it lacked jurisdiction over the action due to Ostrowsky's failure to demonstrate injury sufficient to confer standing. As the court noted, the report itself did not constitute a disciplinary action and Ostrowsky had demonstrated no cognizable harm to his employment status. *See Ostrowsky v. N.Y.C. Bd. of Educ.*, No. 102337/12 (N.Y. Sup. Ct. Mar. 1, 2013) (reprinted in the defendants' reply brief, DE 43-2, Ex. B). Because the court's decision is a matter of public record that can be accessed via the Internet (*see* http://decisions.courts.state.ny.us/fcas/fcas_docs/2013mar/3001023372012001sciv.pdf), this court may take it into account in deciding the instant motion to dismiss notwithstanding the fact that it is not mentioned in the Complaint. *See, e.g., Fullerton Ave. Land Dev. Ltd. v. Cianculli*, 48 Fed. App'x 813, 814 n.1 (2d Cir. 2002).

3

Report, the "Two Documents") placed in Ostrowsky's personnel file. *Id.* ¶¶ 132-33, 216-28, 235, 311-16.[2]

Near the end of the 2011-2012 school year, Apostilidis and a neutral observer conducted a second classroom observation and rated Ostrowsky's performance as satisfactory. *Id.* ¶¶ 85 n.10, 215. Shortly thereafter, Apostolidis notified Ostrowsky that he would be required to attend another disciplinary meeting, this one arising from accusations made by other teachers about Ostrowsky's ability to correctly grade students' responses to the Regents' Examination. That meeting, however, never occurred: Ostrowsky was ill on the date originally scheduled, at which point the meeting was rescheduled for the Fall of 2012; by that time, Ostrowsky had sought and received a transfer to another school. *See id.* ¶¶ 235-37, 254-65, 270-74.

On June 14, 2012, Ostrowsky received his Annual Professional Performance Review ("APPR") for the 2011-2012 school year. The report gave Ostrowsky an overall rating of "unsatisfactory" (the "U Rating"), and included subsidiary unsatisfactory ratings in four specific categories: control of class; maintenance of wholesome classroom environment; attention to pupil health, safety, and general welfare; and care of equipment by teacher and children. Ostrowsky alleges that his personnel file contained no substantiation for these ratings. *Id.* ¶¶ 227, 284-97.[3]

---

[2] The defendants contend that it is inappropriate to characterize the document reflecting the meeting of April 2, 2012, as a "disciplinary" document because Ostrowsky was not disciplined. While the position has merit, it has no effect on the legal analysis of the motion. Consistent with the obligation to draw all inferences in Ostrowsky's favor, I adopt his characterization of the document in discussing it below.

[3] Although I generally assume the Complaint's factual allegations to be true, I note that those allegations are internally inconsistent with respect to the existence of substantiation for the U Rating. Specifically, the Complaint alleges that Ostrowsky's personnel file included the Two Documents described above that critique Ostrowsky's performance, as well as the account of another teacher's report. As described by the Complaint, those documents purport to describe Ostrowsky's deficiencies in the same areas for which the APPR rated his performance as

Ostrowsky immediately filed an administrative appeal of the U Rating through his union. *See id.* ¶ 293 n.25. That appeal ultimately became moot, as explained below.

While his appeal was pending over the Summer of 2012, Ostrowsky understood that his U Rating could be cited as a partial basis for demoting him or removing him from his school. *Id.* ¶¶ 215, 241, 285, 293 n.25. The rating was also listed on a database maintained for public school administrators to use in making hiring decisions. *Id.* ¶¶ 405-07; *see also* DE 46 (transcript of oral argument dated April 9, 2013) ("Tr.") at 37; DE 42 (Ostrowsky's memorandum of law in opposition to the motion) ("Opp.") at 10 n.9, 20. Concerned about his future employment prospects at FSSA, Ostrowsky applied for 200 to 300 teaching positions at other schools within the DOE system and also enrolled in classes to qualify as a Certified Public Accountant to prepare for the possibility that he might have to pursue an alternative career. *Id.* ¶¶ 123-24, 405. During this time, Ostrowsky suffered from physical illness, anxiety, and sleeplessness. *Id.* ¶¶ 23-24, 84.

Ostrowsky succeeded in securing a position as a tenured math teacher at the High School for Global Citizenship ("HSGC"). He accepted HSGC's offer, resigned from FSSA, and asked administrators at FSSA to reverse his U Rating for the 2011-2012 school year. *Id.* ¶¶ 18, 109. They granted his request, and revised his rating for the year to "satisfactory" (an "S Rating"). *Id.* ¶¶ 5, 355. Ostrowsky's voluntary transfer and his successful effort to secure an improved rating for the 2011-2012 school year mooted his administrative appeal of the U rating.

Ostrowsky's commute to HSGC is longer and more expensive than his former commute to FSSA. In addition, the students at HSGC are less motivated than those at FSSA, and Ostrowsky

---

unsatisfactory. *See id.* ¶¶ 132-205, 216-28, 304-16 (describing contents of the Two Documents), 275-83 (describing oral report by another teacher of a classroom vandalized during Ostrowsky's teaching periods).

therefore must work harder to prepare his lessons. *Id.* ¶¶ 19, 21, 22, 84.[4] Further, Ostrowsky's decision to transfer to HSGC has also caused him to work in less desirable classroom locations, with a less desirable teaching schedule, and with fewer opportunities to work as a substitute teacher than he enjoyed at FSSA. *Id.* ¶¶ 337-45.

     B.    Proceedings

Ostrowsky filed his original complaint on May 16, 2012, after the Two Documents had been placed in his personnel file, but before he received the U Rating for the full school year and before he successfully sought a transfer to HSGC. *See* DE 1. On June 6, 2012, the defendants requested a pre-motion conference in anticipation of filing a motion to dismiss. Three months later, on September 5, 2012, the court referred that request to me. I held a pre-motion conference on September 19, 2012. By that time, Ostrowsky had received his rating for the prior school year and had transferred to HSGC. The parties therefore agreed that for the purposes of the motion to dismiss, the Complaint would be deemed amended to allege the U Rating, its subsequent change to an S Rating, Ostrowsky's successful request to transfer schools during the summer of 2012, and his experience of emotional distress arising from the U Rating in the months prior to his transfer. *See* DE 22. After the parties agreed to briefing schedules, Ostrowsky subsequently amended the Complaint twice, occasioning the withdrawal of the defendants' already-served motion papers and a new request to file a motion to dismiss the amended pleading, which was granted. *See* DE 24; DE 31; Order dated Feb. 21, 2013; DE 35; Fed. R. Civ. P. 12(b)(6).

---

[4] I hasten to reiterate that I am required to assume the truth of Ostrowsky's allegations for the purpose of analyzing the legal viability of his claims. By doing so, I intend no disrespect to the students, teachers, or administrators at HSGC. Aside from the allegations in the Complaint, the record provides no reason to share either Ostrowsky's dim view of the students at his current school or his belief that one can fairly make such a sweeping generalization about the entire student body at any school.

Ostrowsky's Complaint, as amended, asserts three causes of action under federal law for the alleged deprivation of his liberty and property interests in violation of his right to due process.[5] Specifically, Ostrowsky asserts that the DOE and the individual defendants, all local government employees, acted under color of state law to give him the U Rating for the 2011-2012 school year, and to place the Two Documents in his personnel file, without due process of law. Ostrowsky contends that the U Rating jeopardized his prospects of maintaining employment as a tenured teacher at FSSA, and thereby deprived him of a cognizable liberty interest notwithstanding the fact that the U Rating was later reversed. He further asserts that the improper imposition of the U Rating, together with other instances of conduct that in combination amounted to a pattern of harassment, unfairly deprived him of a cognizable property interest because it prompted Ostrowsky to expend resources to seek training for an alternative career, and to secure a transfer that resulted in the loss of certain non-monetary job benefits. *See* Complaint ¶¶ 356-409.

Ostrowsky also asserts two tort claims under state law. In his fourth cause of action, he contends that the Two Documents Apostolidis authored and placed in his personnel file are defamatory because they contain falsehoods and subjective, negative opinions unsupported by actual events. *Id*. ¶¶ 410-21. Finally, in his fifth cause of action, Ostrowsky asserts that Apostolidis and Finn, through their classroom observations, informal observations, written reports and communications, and annual rating of Ostrowsky, acted in furtherance of a plan that Mayor Bloomberg and Chancellor Walcott concocted to oust tenured teachers like him. Ostrowsky claims that the plan "shocks the public conscience" and caused him physical and emotional harm, and therefore constitutes the intentional infliction of emotion distress. *Id*. ¶¶ 423-30.

---

[5] The Complaint also asserted claims under the Equal Protection Clause, *see* Complaint ¶¶ 13, 25, 429, but Ostrowsky has withdrawn them. *See* Tr. at 8.

The defendants now move to dismiss the Complaint for failure to state a claim upon which relief may be granted. DE 35. By order dated April 2, 2013, the court referred the motion to me. I heard oral argument on April 9, 2013. DE 44.

II.   Discussion

A.   Standard of Review

In assessing the legal sufficiency of Ostrowsky's claims, the court must accept as true all of the Complaint's factual allegations and draw all reasonable inferences in his favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citations omitted). A Complaint's assertions must state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the facts alleged allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a Complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).

When assessing the sufficiency of a Complaint, the court must distinguish factual contentions, which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted, from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678. Although the court must assume the truth of the Complaint's factual assertions, it need not credit "a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

As set forth in detail below, I have analyzed all of Ostrowsky's claims on their merits and concluded that all of them should be dismissed with prejudice because the applicable law does not provide a remedy for the conduct about which Ostrowsky complains. As a result, I do not address a number of the arguments that the defendants have offered in support of their motion, as such analysis would be superfluous. Thus, for example, while I agree with the defendants that Ostrowsky lacks standing for his federal claims because he has not alleged a cognizable injury to any protected liberty or property interest, I do not independently address that standing argument because it would be duplicative of the similar analysis that disposes of Ostrowsky's federal claims on the merits. Similarly, the defendants have persuasively demonstrated that Ostrowsky's claims for municipal liability, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), are fatally flawed, as are his claims against Mayor Bloomberg and Chancellor Walcott – both named as defendants despite any allegation of their personal involvement in the events at issue – but a ruling in their favor on those arguments would not obviate the need to address the substance of the claims against the individual defendants. I therefore discuss below only those defects that undermine Ostrowsky's claims against all of the defendants.[6]

---

[6] For the same reason, I do not address below whether the state court decision rejecting Ostrowsky's Article 78 challenge to the placement in his personnel file of one of the Two Documents precludes the parallel civil rights claim he brings here under the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). While I believe that it does, *see, e.g.*, *Hachamovitch v. DeBuono* 159 F.3 687 (2d Cir. 1998) (applying the *Rooker-Feldman* doctrine to decline to exercise jurisdiction over one claim brought in a previous Article 78 proceeding while exercising jurisdiction over other federal claims), such a ruling as to just some of the defendants would not compel the overall result that I believe to be warranted for the reasons discussed below.

B.    Due Process

Ostrowsky's first three causes of action accuse the defendants of acting under color of state law to deprive him of his right to procedural due process under the Fourteenth Amendment by virtue of their actions with respect to the U Rating and the placement of the Two Documents in his personnel file. *See* Complaint ¶¶ 356-409. To establish liability on such claims, Ostrowsky must show that he possessed a protected liberty or property interest, and that the defendants deprived him of that cognizable interest without due process. *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 338 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)); *see Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("[P]rocedural due process questions [are examined] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citations omitted), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 484 (1995). As set forth below, the Complaint's allegations do not support such a cause of action.

1.    Property

Property interests are not created by the Constitution, but are rather "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A property interest in a benefit is created by a legitimate claim of entitlement to that benefit, not merely an abstract need, desire, or unilateral expectation for it. *Id*. In determining whether a contractual right can be characterized as a constitutionally protected property interest, "a court

must look to whether the interest involved would be protected under state law and must weigh the importance to the holder of the right." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 783 (2d Cir. 1991) (quotation omitted). While not every contractual benefit rises to the level of a constitutionally protected property interest, *id*. at 782, a tenured public school teacher does have a cognizable property interest in his or her continued employment and pay. *See DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999); *see also Rizza v. Black*, 2012 WL 2017365, at *3 (E.D.N.Y. May 7, 2012) (report and recommendation) (collecting cases), *adopted by* 2012 WL 2017333 (E.D.N.Y. June 4, 2012).

The fact that Ostrowsky continues to be employed as a tenured public school teacher with no loss in pay precludes a finding that he has suffered any cognizable harm to a protected property interest. *See O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005); *Rizza*, 2012 WL 2017365, at *3. By itself, the U Rating Ostrowsky received for the 2011-2012 school year does not suffice, *Rizza*, 2012 WL 2017365, at *3, and in any event it has been changed to an S Rating. Similarly, the Two Documents cannot sustain a claim of an unconstitutional deprivation of property: they are merely negative assessments of Ostrowsky's performance that did not deprive him of employment or pay. A teacher has no property interest in ensuring that his personnel file remains free of adverse performance reviews. *See Holt v. Bd. of Educ.*, 52 N.Y.2d 625, 631-32 (1981); *Marino v. Shoreham-Wading River Cent. Sch. Dist.*, 2008 WL 5068639, at *5 (E.D.N.Y. Nov. 20, 2008) (collecting cases).

Nor does Ostrowsky's subjective assessment that he needed to request a transfer to HSGC to protect his job suffice; indeed, even an involuntary transfer does not implicate a property interest where, as here, it involves no loss of pay or employment. *See, e.g., Thomas v. Bd. of Educ.*,

2011 WL 1225972, at *9 (E.D.N.Y. Mar. 29, 2011); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 453-54 (S.D.N.Y. 2010); *Lynch v. McNamara*, 342 F. Supp. 2d 59, 65-66 (D. Conn. 2004) (internal citations omitted). Likewise, neither Ostrowsky's additional commuting nor his loss of seniority-based benefits involving classroom resources and scheduling preferences (or the even more tenuous assertion of the expenditure of extra effort to teach allegedly unmotivated students) implicates any constitutionally protected property interest. Ostrowsky does not allege that he had a contractual right to any preference with respect to such job perquisites under the CBA, but even if he did, it would not suffice. Ostrowsky's tenure did not entitle him "to a specific class or proscribe [his] assignment to proper duties of a teacher other than classroom teaching of a specific subject." *Adlerstein v. Bd. of Educ.*, 64 N.Y.2d 90, 99 (1984). Accordingly, none of the harms about which Ostrowsky complains constitutes the deprivation of any constitutionally protected property interest.

2.     Liberty

The liberty interest Ostrowsky seeks to vindicate is in avoiding harm to his reputation. *See*, *e.g.*, Complaint ¶¶ 90, 239, 398-400, 406-07. However, the stigmatization of a plaintiff's good name, by itself, is not an actionable deprivation of a cognizable liberty interest. *See Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). In addition to stigma, Ostrowsky must also establish "some more tangible interest," *Paul*, 424 U.S. at 701, commonly known as "stigma plus." More precisely, Ostrowsky's burden is to show that the defendants made stigmatizing statements about him; that the statements call into question his good name, reputation, honor, or integrity; and that the statements were made concurrently with, or in close temporal proximity to, a loss of a substantial government-conferred

12

right or status, such as dismissal from government employment. *See Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). As explained below, Ostrowsky's complaints about the U Rating and about the Two Document do not meet that burden.

Ostrowsky's claims all fail to establish the necessary plus factor. First, neither the U Rating, nor the Observation Report, nor the Disciplinary Lettter was a stigmatizing statement that called into question Ostrowsky's good name, reputation, honor, or integrity. To be sure, a negative review of a plaintiff's professional competence can be sufficiently stigmatizing for purposes of a due process claim, but only if it is "[s]ufficiently serious[.]" *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 632 (2d Cir. 1996), *cert. denied*, 519 U.S. 1150 (1997). To clear that hurdle, the challenged statement must "denigrate the employee's competences as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in the employee's continued ability to practice his or her profession[.]" *Segal*, 459 F.3d at 212 (quotation omitted); *see also O'Neill v. Auburn*, 23 F.3d 685, 690-93 (2d Cir. 1995) (statements about plaintiff's incompetence did not foreclose future employment and so did not rise to the level of stigma). Likewise, a statement causing "public opprobrium," such as an accusation that a teacher has inflicted corporal punishment on a student, can also jeopardize a liberty interest in reputation. *See Weintraub v. Bd. of Educ.*, 423 F. Supp. 2d 38, 60 (E.D.N.Y. 2006).[7] However, statements that "an employee poorly performed [his] duties or acted in an

_____

[7] A statement manifestly cannot cause "public" opprobrium if it is not published. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). Because the U Rating, while it was in effect, was available to school administrators considering teachers for their schools, *see* Complaint ¶¶ 405-07, I assume for purposes of analysis that it meets the latter requirement (notwithstanding the defendants' persuasive legal argument to the contrary). I cannot make the same assumption about the Two Documents: Ostrowsky does not allege their publication and nothing in the record provides any basis to believe that anyone other than the parties ever saw them.

13

improper manner" are not stigmatizing. *LaForgia v. Davis*, 2004 WL 2884524, at *8 (S.D.N.Y. Dec. 14, 2004). Nor do descriptions of behavior or actions "within the employee's power to correct" generally qualify as stigmatizing. *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972). "Conclusory" or "nondescript" unsatisfactory ratings or negative reports by themselves can almost never amount to stigma. *See Martinez v. City of New York*, 2003 WL 2006619, at *7 (S.D.N.Y. Apr. 30, 2003), *aff'd*, 82 Fed. App'x 253 (2d Cir. 2003). Viewed against this legal framework, neither the U Rating (which was in any event reversed at Ostrowsky's request), nor the Observation Report, nor the Disciplinary Letter can be deemed sufficiently stigmatizing to support Ostrowsky's claim that he was deprived of a cognizable liberty interest.[8]

Second, the statements at issue did not cause the kind of harm necessary to establish the plus factor that transforms a stigmatizing statement into a cognizable deprivation of liberty. To show a sufficient level of harm, Ostrowsky must plead the deprivation of a "tangible interest" or property right. *Segal*, 459 F.3d at 212. Had the U Rating or the Two Documents caused him to lose his job as a tenured school teacher, Ostrowsky would satisfy that requirement. *See*, *e.g.*, *id.* at 213; *Adams*, 752 F. Supp. 2d at 452. But because Ostrowsky has undisputedly kept his job, his voluntary transfer does not suffice to establish a plus factor based on harm that he suffered as a result of any statement by the defendants. Moreover, to the extent that Ostrowsky claims that the U Rating and the Two Documents made it harder for him to secure the transfer he wanted, that too is not enough: the "deleterious effects which flow directly from a sullied reputation" – including

_____

[8] Ostrowsky must also plead that that the allegedly stigmatizing statements are false. *Patterson*, 370 F.3d at 330. Because he alleges that some of the events recounted in the negative evaluations that contributed to the U Rating did not occur, *see* Complaint ¶¶ 138, 145,146, 150, 153, 170, 205, I assume this pleading requirement to be satisfied, notwithstanding the fact that for the most part, Ostrowsky's challenge is predicated on Apostolidis's concededly "subjective" interpretation of those events. *Id.* ¶ 186, 188, 212, 221, 304.

diminished "job prospects … or any other typical consequence of a bad reputation" generally do not suffice. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).[9]

The only other possible plus factor that Ostrowsky purports to identify is his contention that because the APPR and the Two Documents contained false statements, the defendants engaged in the "criminal act of falsifying business records about him that [were] entered [in]to an official government data base[.]" Opp. at 17. However, Ostrowsky cites no authority to support either the proposition that the defendants' actions were criminal or, more fundamentally, that the criminality of such actions would suffice to establish the necessary plus factor. The plus factor identifies those harms to a plaintiff's liberty interests that rise above the harm flowing from the tort of defamation alone; but the fact that a defendant who makes a defamatory statement may also be subject to criminal liability – a possibility that arises only because of the harm such conduct causes to the interests of the *sovereign* – does nothing at all to amplify the harm to the *plaintiff's* interests. Moreover, endorsing Ostrowsky's argument would eviscerate the existing case law, discussed above, that rejects the proposition that every critical performance evaluation in a public employee's personnel file can sustain a due process claim simply by including a factual statement that the plaintiff can claim to be false. Accordingly, I reject Ostrowsky's unsupported argument that he has satisfied the requirement of establishing a plus factor by alleging that the defendants engaged in criminal conduct by placing the APPR and the Two Documents in his personnel file.

---

[9] For purposes of analysis, I assume that Ostrowsky has asserted that the U Rating and the Two Documents caused some harm to his professional reputation. Such an assertion is insufficient for the reasons set forth above. I note, however, that the assumption of such reputational harm may not be warranted. To the contrary, Ostrowsky pleads not only that his teaching was "above reproach for over a decade" before the events at issue, but also that it "still is above reproach" notwithstanding the criticisms of which he complains. Complaint ¶ 204.

3.      <u>Procedural Rights</u>

Even if the Complaint could properly be read to plead a cognizable injury to a protected property or liberty interest, it would nevertheless fail to state a Due Process claim because it does not adequately allege the deprivation of any process to which Ostrowsky was entitled. In assessing this aspect of Ostrowsky's claim, the court must determine "what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976)). A deprivation of liberty or property must be "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citations omitted).

Ostrowsky does not assert that defendants failed to afford him any procedural protection to which he was contractually entitled under the CBA or any such protection to which he was entitled as a matter of law. Under the CBA, a tenured teacher like Ostrowsky may not be dismissed without first receiving oral notice and an opportunity to provide an oral response. *Cf. Loudermill*, 470 U.S. at 546 (a tenured public employee is entitled, before being terminated, "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"). But Ostrowsky was not fired; he was merely given a U Rating – which was converted to an S Rating at his request once Ostrowsky took it upon himself to secure a transfer to HSGC. *Cf. Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (holding plaintiff cannot complain of procedural defects in termination where plaintiff resigned before government employer took all necessary steps to terminate plaintiff).

Similarly, Ostrowsky plainly received all the process to which he was due with respect to the Two Documents: pursuant to procedures established in the CBA, he was given the right to review the Two Documents and to respond to them by placing a rebuttal in his personnel file. Indeed, Ostrowsky exercised that right with respect to the Observation Report. By virtue of the CBA, Ostrowsky has waived the right to any other procedure concerning the placement of negative evaluations in his personnel file. *See Hickey v N.Y.C. Dep't of Educ.*, 17 N.Y.3d 729 (2011); *see also Cohn v. Bd. of Educ.*, 901 N.Y.S.2d 640 (App. Div. 2010) (holding that a letter to file is not a form of discipline and thus does not entitle a teacher to oral notice and an opportunity to respond); *Holt*, 52 N.Y.2d at 631-32 (same); *Memminger v. Westbury Union Free Sch. Dist.*, 441 N.Y.S.2d 400 (App. Div. 1981) (same).[10]

Finally, to the extent Ostrowsky complains of the adverse ancillary effects of his transfer to HSGC, his Due Process claim must fail because that transfer was not imposed upon him; to the contrary, he sought it out. Moreover, even if Ostrowsky's voluntary transfer did not preclude a procedural Due Process claim, he could not demonstrate the deprivation of applicable procedural protections because he retains the right to seek redress for any working conditions at HSGC that violate his contractual rights by filing an employee grievance, and if dissatisfied with the result, to file an Article 78 proceeding in New York state court – a right he demonstrably knows how to exercise. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (Article 78 proceeding is an adequate post-deprivation remedy for due process purposes).

---

[10] To the extent Ostrowsky's concern is that the procedures available under the current CBA offer protection that is inferior to the grievance procedure previously available, *see* Complaint ¶¶ 7, 98, 110, 317, 378; Opp. at 12-13, 24, it is of no moment: the Due Process Clause guarantees only a minimal level of protection – a level that the process at issue here achieves.

In short, neither the U Rating temporarily imposed on Ostrowsky, nor the potentially temporary placement of Two Documents in his personnel file critical of his performance,[11] nor Ostrowsky's transfer to continue working as a tenured teacher at the same rate of pay at another public school constitutes the cognizable deprivation of any protected liberty or property interest without due process of law. I therefore respectfully recommend that the court dismiss Ostrowsky's first three causes of action. Moreover, because the defects in those claims inhere in the facts that Ostrowsky has affirmatively pleaded, as opposed to some failure to include a critical factual allegation, I respectfully recommend that the dismissal be without leave to file any further amendment and with prejudice.

C.      State Law Claims

Notwithstanding the foregoing recommendation, which if accepted would dispose of all of the pending claims over which this court has original jurisdiction, I further respectfully recommend that the court address the merits of Ostrowsky's state law claims because they arise from the same facts at issue in the federal claims. *See*, *e.g.*, *Rivers v. Towers, Perrin, Forster, & Crosby, Inc.*, 2009 WL 817852, at *8 (E.D.N.Y. Mar. 27, 2009) (exercising supplemental jurisdiction to examine defamation and intentional infliction of emotion distress claims).

As a threshold matter, the court could properly dismiss the defamation and emotional distress claims as abandoned because Ostrowsky has not provided any substantive response to the defendants' arguments in support of the motion to dismiss. To be sure, Ostrowsky does not ignore the claims entirely: in his memorandum of law he argues only that this court should determine

---

[11]  Pursuant to the CBA, the Two Documents will remain in Ostrowsky's personnel file for no more than three years unless, before the end of that period, they are used to support disciplinary charges against Ostrowsky. *See Hickey*, 17 N.Y.3d at 732. No such charges have been brought to date, and there is no basis to speculate that any charges will be made in the future.

those claims because he believes that state court judges are overburdened and not sufficiently independent of the Mayor. *See* Opp. at 24. But after explaining why it is important for this court to decide the state law claims, Ostrowsky does not go on to explain why such a decision should be in his favor. That lapse suffices to grant dismissal of the state law claims. *See Thomas v. N.Y.C. Dep't of Educ.*, --- F. Supp. 2d ----, 2013 WL 1346258, at *22 (E.D.N.Y. Mar. 29, 2013) (deeming supplemental state law claim brought by public school teacher represented by the same attorney as Ostrowsky to be abandoned where he did not respond to substance of motion to dismiss that claim). Nevertheless, my recommendation that the court should grant the motion to dismiss is based solely on the substantive analysis presented below rather than on any theory of waiver. I similarly ignore Ostrowsky's waiver in recommending that the dismissal be with prejudice; while his failure to respond to the defendants' arguments unquestionably bolsters the latter recommendation, I would make it in any event because the defects in the claims inhere in the substance of Ostrowsky's position rather than in a technical pleading defect (defects he has in any event already had multiple opportunities to cure).

1.    Defamation

Ostrowsky claims that both the Observation Report and the Disciplinary Letter that Apostolidis authored were defamatory. Complaint ¶¶ 410-21. To plead a viable claim of defamation under New York law, Ostrowsky must allege "(1) a false statement about the complainant; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation *per se* or caused special damages." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405,

411 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 274 (E.D.N.Y. 2009).

I assume for purposes of analysis that the Two Documents contain the kinds of factual statements, capable of being falsified, that must form the predicate of a viable defamation claim, and that the statements at issue are not simply non-actionable statements of opinion.[12] But Ostrowsky must plead more than that the challenged statements were false: a defamatory statement of fact is one that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379 (1977) (quotations omitted). Even assuming that the content of the Two Documents could conceivably be deemed "reasonably susceptible of a defamatory connotation," *Henneberry v. Sumimoto Corp. of Am.*, 2005 WL 991772, at *15 (S.D.N.Y. Apr. 27, 2005) (quotations omitted) – a questionable assumption at best[13] – Ostrowsky has failed to allege that the statements were

---

[12] That assumption is not necessarily justified. The Complaint itself describes the Disciplinary Letter as expressing Apostolidis's opinion about Ostrowsky's conduct, *see, e.g.*, Complaint ¶ 221, and Ostrowsky's counsel acknowledged at oral argument that that the purportedly defamatory statements in the Observation Rreport were not factual but instead limited to expressions of opinion. *See* Tr. at 39-40 (plaintiff's counsel agreeing "[a]bsolutely" with the proposition that "the letters in the file [*i.e.*, the Two Documents] are subjective evaluations … as opposed to factual reports"). Nevertheless, the Complaint does explicitly allege some statements that appear to be factual in nature and that Ostrowsky characterizes as false, and I therefore assume the statements at issue to be sufficiently factual in nature to support a potentially viable defamation claim.

[13] Although the Complaint's prolixity makes a thorough summary impractical, its descriptions of the Two Documents' content contains nothing that, if believed, could reasonably be expected to expose Ostrowsky to "contempt, ridicule, aversion, or disgrace" or to cause "right-thinking persons" to shun him. The allegedly defamatory statements include such matters as accusations in the Observation Report that Ostrowsky permitted his students to call out answers without first being recognized (Complaint ¶ 138), deflected a student's question (*id.* ¶ 146), erased a student's work on a blackboard and replaced it with his own (*id.* ¶ 150), as well as a critique in the Disciplinary Letter that Ostrowsky demonstrated poor classroom management skills by allowing a

published to anyone at all. Ostrowsky alleges only that the Two Documents were placed in his personnel file; he does not allege that anyone other than his supervisors saw them or learned of their contents. To the contrary, Ostrowsky alleges only that the Two Documents remain in his personnel file "for later use" in future evaluations. Complaint ¶ 333. That does not constitute a level of publication sufficient to support a defamation claim. *See*, *e.g.*, *Berhanu v. N.Y. State Ins. Fund*, 1999 WL 813437, at *16 (S.D.N.Y. Oct. 8, 1999) (holding placement of evaluations by supervisors in personnel file is not publication).

Ostrowsky also fails to plead either that the statements at issue were defamatory *per se* because they tended to cast aspersions on his basic character and integrity, or that they caused him special damages by resulting directly in his loss of something of economic or pecuniary value. *See*, *e.g.*, *Henneberry*, 2005 WL 991772, at *15 (internal citations omitted). For this reason as well, Ostrowsky's defamation claim fails to plead a viable cause of action and should be dismissed.[14]

## 2. Intentional Infliction of Emotional Distress

Ostrowsky's fifth cause of action asserts a claim of intentional infliction of emotional distress against all defendants. Complaint ¶¶ 422-30. As a threshold matter, applicable New York law does not recognize such a claim against a governmental entity such as the DOE, and the claim must therefore be dismissed against that defendant. *See Thomas*, 2013 WL 1346258, at *22; *Payne*

---

student to go to the school lunch room during his class (*id.* ¶¶ 216-26, 311-16). Whatever the pedagogical import of such criticisms, I cannot conclude that they would provoke in any rational audience the kind of disapprobation required to find the statements potentially defamatory – and Ostrowsky makes no attempt to argue otherwise.

[14] Because, as set forth above, Ostrowsky fails to plead at least two of the four elements of defamation, the court should dismiss it against all defendants and therefore need not resolve the defendants' claim that some of them are entitled to a defense of qualified or absolute immunity.

*v. N.Y.C. Police Dep't*, 863 F. Supp. 2d 169, 189 (E.D.N.Y. 2012) (citing *Ellison v. City of New Rochelle*, 879 N.Y.S.2d 200, 204 (App. Div. 2009)).

The claim against the individual defendants fares no better. To plead a claim of intentional infliction of emotional distress against a defendant under New York law, Ostrowsky must allege that the defendant's conduct was extreme and outrageous, that the defendant acted with the intent to cause severe emotional distress or with reckless disregard that such conduct would cause severe emotional distress, that the defendant's conduct cause him injury, and that he suffered severe emotional distress. *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993); *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Extreme and outrageous conduct is that which "go[es] beyond all possible bounds of decency [as] to be regarded as atrocious and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 121 (quotations omitted). To survive a motion to dismiss, the alleged conduct "must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant. Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities … [are] not sufficiently outrageous." *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, 2007 WL 121431, at *6 (E.D.N.Y. Jan. 12, 2007) (quotations omitted). Even where a defendant is alleged to have acted "with an intent which is tortious or even criminal, or has intended to inflict emotional distress, or has even engaged in conduct that has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, there can be no claim if the conduct at issue is not utterly reprehensible." *Freedom Calls Found. v. Bukstel*, 2006 WL 2792762, at *3 (E.D.N.Y. Sept. 7, 2006) (quotations omitted). Defamatory statements – even when motivated by a desire to see an employee terminated or prevented from securing new

employment – are generally not sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress. *See*, *e.g.*, *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001) (dismissing the claim where defendant falsely accused plaintiff university coach of having improper sexual relationship with students in order to induce plaintiff's termination). Nothing in the Complaint comes close to satisfying this exacting standard. I therefore respectfully recommend that the court dismiss this claim as well. *See*, *e.g.*, *Thomas*, 2013 WL 1346258, at *6, *22 (finding allegations by a tenured teacher that supervisors manufactured charges to coerce or force resignation, *inter alia*, insufficiently outrageous).

III.     Recommendation

     For the reasons set forth above, I respectfully recommend that the court grant the defendants' motion and dismiss with prejudice all of the plaintiff's claims.

IV.     Objections

     Any objections to this Report and Recommendation must be filed no later than September 16, 2013 Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

     SO ORDERED.

Dated: Brooklyn, New York
          August 30, 2013

                              _____/s/_____
                              JAMES ORENSTEIN
                              U.S. Magistrate Judge